IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| John P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50399 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Martin J. O'Malley, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

John P. ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability and disability insurance benefits. The parties have filed cross motions for summary judgment. [17, 22]. As detailed below, Plaintiff's motion for summary judgment [17] is denied and the Commissioner's motion for summary judgment [22] is granted.

**BACKGROUND**

A. Procedural History

On February 16, 2018, John P. ("Plaintiff") protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning July 27, 2017. R. 10. Plaintiff amended his alleged onset date to January 19, 2018, the day following a prior decision denying a prior disability claim. R. 34. The Social Security Administration ("Commissioner") denied his application on June 27, 2018, and upon reconsideration on September 21, 2018. R. 10. Plaintiff filed a written request for a hearing on September 26, 2018. *Id*. On July 24, 2019, a hearing was held by Administrative Law Judge ("ALJ") Kevin Vodak, where Plaintiff appeared with counsel. *Id*. An impartial vocational expert, Jonathan DeLuna, also appeared at the hearing. *Id*.

On September 23, 2019, the ALJ issued his written opinion denying Plaintiff's claims for disability insurance benefits. R. 10–23. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1–6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's

---

[1] Martin O'Malley was confirmed as Commissioner of the Social Security Administration on December 20, 2023, and is substituted for Kilolo Kijakazi. Fed. R. Civ. P. 25(d).
.

motion for summary judgment [17] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [22].

B.  The ALJ's Decision

In his ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the alleged onset date. R. 12. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease in cervical and lumbar spine; idiopathic polyneuropathy with history of carpal tunnel syndrome and cubital tunnel release bilaterally; status post amputation right distal phalanx 2nd toe and resection proximal interphalangeal joint; and obesity. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 13.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following limitations: Plaintiff can stand or walk four hours in an eight-hour workday; occasionally operate right foot controls; frequently operate left foot controls; occasionally reach overhead bilaterally; frequently reach in other directions bilaterally; and frequently handle, finger, and feel bilaterally. The ALJ further found that Plaintiff can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. Plaintiff can occasionally balance, stoop, kneel, crouch, and crawl. He can never work at unprotected heights or near moving mechanical parts and can occasionally be exposed to extreme cold and vibration but can have no exposure to wet or slippery surfaces or uneven ground. *Id*. At step four, the ALJ found that Plaintiff could not perform any past relevant work. R. 21. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including router, mail sorter, officer helper, and parking lot signaler. R. 21-22. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from his alleged onset date through December 31, 2018, his date last insured. R. 22.

**STANDARD OF REVIEW**

The reviewing court examines the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This standard is satisfied when the ALJ

"minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Burger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

"An ALJ need not mention every piece of medical evidence in [his] opinion, but [he] cannot ignore a line of evidence contrary to [his] conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). Nor can ALJs "succumb to the temptation to play doctor and make their own independent medical findings," *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Ultimately, the court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted).

## DISCUSSION

In his motion, Plaintiff argues the ALJ erred in failing to support the decision that Plaintiff retained an RFC to perform light work by (1) improperly "playing doctor" in determining that Plaintiff was capable of walking or standing four hours in an eight-hour workday; and (2) improperly evaluating Plaintiff's credibility. Plaintiff further argues the ALJ failed to properly confront Plaintiff's feet problems in ruling that Plaintiff would be able to perform light work with restrictions. The Court finds that the ALJ's determinations were supported by substantial evidence. Therefore, the decision is affirmed.

The ALJ properly evaluated Plaintiff's RFC and found, through his date last insured, that he could perform light work with standing or walking four hours in an eight-hour workday. To begin, the ALJ provided an extensive summary of Plaintiff's medical records in the RFC evaluation.

The ALJ recounted that following a work injury in September 2012, Plaintiff began experiencing neck and lower back pain that radiated into his forearms, hands, and right arm. R. 15. He also complained of numbness and tingling in his arms and legs, muscle spasms, stiffness and tightness. In December 2013, Plaintiff underwent left shoulder surgery. *Id*. In January 2015, an MRI of Plaintiff's cervical spine indicated stable disc and osteophyte complex at C3-C4, resulting in in moderate biforaminal narrowing. In March 2015, Plaintiff had a carpal tunnel decompression surgery. *Id*. An April 2015 MRI showed multilevel degenerative changes at L5-S1 where there was a moderate spinal canal stenosis and moderate bilateral subarticular zone stenosis. There was also moderate to marked narrowing at the medial margin of the right neuroforamen at the L5-S1 level as well as bulging disc at that level, among other findings. R. 15-16. An electromyography (EMG) in April 2016 revealed chronic sensory motor predominately axonal polyneuropathy of bilateral upper and right lower extremity. R. 16. On physical examination in July 2016, Plaintiff exhibited normal strength, reflexes, coordination, and gait. R. 18/346. However, in August 2016, Plaintiff had a lumbar epidural steroid injection, which provided no relief for complained of pain, spasms, and decrease in range of motion. R. 17. The ALJ noted that the record indicated no evidence that Plaintiff required an assistive device. R. 19.

In September 2016, an EMG study suggested superimposed chronic right S1 radiculopathy, and an October 2016 EMG/nerve study indicated moderate distal and symmetric sensorimotor peripheral polyneuropathy. R. 18. Plaintiff noted pain along his upper back, lower neck, and low

3

back, pain and tingling down his legs and persistent numbness and tingling along his fingers and both hands but reduced slightly from the use of bilateral wrist bands. *Id*. A December 2016 MRI of Plaintiff's lumbar spine demonstrated lower lumbar spine disease, stenosis and narrowing at L4-5 and more significant at L5-S1. R. 17. During this time, Plaintiff's treating physician, Dr. Dmitry Novoseletsky, opined that Plaintiff should consider a thoracic spinal cord stimulator as an alternative to surgery. However, Plaintiff then reported some improvement in back pain with medications including Medrol Dosepak, Morphine, and Norco. Plaintiff's medical record from December 20, 2016, showed his neuropathic symptoms to be stable. R. 17/361.

A May 2017 x-ray of Plaintiff's bilateral foot demonstrated mild hallux valgus deformity bilaterally, slightly greater on the right than left with degenerative disease. R. 17. Plaintiff underwent surgery in both June and July 2017 for hammertoe repair and amputation of his second right toe. R. 16. At that time, Plaintiff presented with normal strength in his upper and lower extremities. R. 18/313. At physical examinations in December 2018 and January 2019, Plaintiff presented with moderately sized painful plantar fibroma on the medial band of the plantar fascia. Additional findings included slightly diminished sensation to level of toes. R. 17. An MRI of Plaintiff's left ankle in February 2019 revealed mild fatty atrophy of the left foot and mild joint osteoarthritis of the ankle. R. 17. In March 2019, Plaintiff reported that his neuropathy symptoms were controlled with Gabapentin and rarely experienced tremors. R. 18.

In addition to a comprehensive review of Plaintiff's medical history, in determining Plaintiff's RFC, the ALJ assessed Plaintiff's activities of daily living, the medical opinions of the state agency reviewing physicians, the state agency independent evaluator, Plaintiff's treating physician, and Plaintiff's statements.

As to Plaintiff's daily living, the ALJ found that Plaintiff lived independently, could perform light housework and simple cleaning, including washing dishes, vacuuming, and folding laundry. He was able to assist his daughter in getting ready for school, could take her to school, and could attend medical appointments. R. 15. Additionally, Plaintiff testified to caring for his disabled 23-year-old son. R. 51-53. Plaintiff was able to perform personal hygiene including taking a shower, changing clothing unassisted, eating meals, and driving a car. The ALJ found that Plaintiff's ability to performs these tasks "indicate rather intact mental and physical capabilities." *Id*.

The ALJ noted that the state agency reviewing physicians reviewed the record evidence but did not actually examine Plaintiff. These physicians opined that Plaintiff could lift or carry 20 pounds occasionally and ten pounds frequently. R. 19. They noted his ability to push and pull was limited, and he could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl, but never climb ladders, ropes, or scaffolds. *Id*. He could frequently handle, finger, and feel bilaterally, but should avoid exposure to extreme cold, wetness, vibration, and hazards. He could frequently reach overhead bilaterally. The reviewing physicians found that Plaintiff could stand or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. *Id*. The ALJ found these opinions partially persuasive and not entirely inconsistent with the other evidence of record. *Id*. However, based on his review of the entire record, the ALJ found that Plaintiff was "more limited than what these reviewers determined." *Id*. The ALJ determined that Plaintiff could stand or walk only four hours in an eight-hour workday. *Id*. As noted above, the ALJ also found

that Plaintiff could use foot controls on the right side occasionally and on the left side frequently, in consideration of his neuropathic impairment, spinal impairments, and obesity. R. 19-20. The ALJ limited Plaintiff to overhead reaching occasionally and reaching in all other directions to frequently with the bilateral upper extremities. R. 20. In support of his finding that Plaintiff is more restricted than the state agency physicians found, the ALJ noted that while Plaintiff was remarked to have normal bulk, tone, and strength, he continued to experience numbness and tingling in all of his extremities. *Id*. The ALJ also noted that Plaintiff suffered from a toe amputation and continued to have pain in his feet due to calluses. Despite the decision to provide more restrictions than recommended by the state agency physicians, the ALJ also found that the record as a whole did not support a finding of disability. *Id*.

Next, the ALJ assessed the opinion of the state independent evaluator, Dr. K.P. Ramchandani. Dr. Ramchandani's impressions included, among other things, slow and measured gait, yet unassisted; ability to walk on his heels, squat partially with support, yet unable to walk on his toes. R. 20. Plaintiff could get on and off the examination table, make a fist, pick up objects, and flip pages. *Id*. Dr. Ramchandani found that Plaintiff was not limited in fine motor tasks. Plaintiff exhibited normal muscle power, tone, and mass in all extremities, yet reduced touch and pin prick in hands and plantar aspect of right foot. He found Plaintiff to have diminished range of motion of his cervical spine, shoulders, lumbar spine, hips, and knees. *Id*. The ALJ found Dr. Ramchandani's examination, in support of a more restrictive functional capacity assessment than the state agency physicians, consistent with the record evidence and, therefore, partially persuasive. *Id*.

Plaintiff's treating physician, Dr. Novoseletsky, using findings from a June 2016 functional capacity examination, opined that Plaintiff could return to work with some limitations – including, standing two hours, walking four to six hours, occasionally balancing, stooping, and crouching, occasionally using right foot controls and frequently using left foot controls. R. 20-21. The ALJ found Dr. Novoseletsky's limitations to be partially persuasive. While the ALJ adopted much of Dr. Novoseletsky's limitations, he found that Plaintiff exhibited some improvements since the June 2016 functional capacity examination. R. 21.

As to Plaintiff's statements, in Plaintiff's March 2018 functional report (R. 251-59), Plaintiff asserted a need to lie day during the day to alleviate pain, and that he is unable to mow the lawn, move furniture, paint, or perform other home maintenance. R. 252. He complained of trouble falling asleep and staying asleep due to pain and sleep apnea. *Id*. He further reported trouble with balance, shaking hands, and extremities falling asleep. He also noted an inability to lift over 10 pounds, cannot stand more than 30 minutes without a break, has difficulty going up or down stairs, and has trouble completing tasks due to pain. R. 256, 258. At his July 2019 hearing, Plaintiff testified to neuropathy in his hands, legs, feet, and face, and surgeries on shoulder, hand, and elbow. R. 37-39. He also testified to pain in his neck and shoulder areas, requiring pain medication, R. 42. Plaintiff advised that he would have to lie down due to pain one to two times a day, and that his condition was "deteriorating." R. 48-49. In his decision however, the ALJ found Plaintiff's statements not entirely consistent with the medical and other evidence in the record. R. 19.

In support of his argument that the ALJ "played doctor" in determining that Plaintiff was capable of walking or standing four hours in an eight-hour work day, Plaintiff states: "after listing

5

the plaintiff's medical complaints, the ALJ simply offers the conclusion: 'In consideration of the claimant's bilateral foot impairments, obesity, and spinal impairments, it has been determined that the claimant is limited to standing/walking four hours in an eight-hour workday.'" [17], p. 7. He argues there was no "logical bridge" between the medical records and the ALJ's belief that Plaintiff would be capable of standing or walking four hours in an eight-hour workday. Plaintiff acknowledges that while the state agency physicians indicated that Plaintiff could stand or walk *six* hours in an eight-hour workday, and that the ALJ limited that further by finding that Plaintiff could only stand or walk *four* hours in an eight-hour workday, he argues that the ALJ provided no explanation for why he believes Plaintiff capable of even that degree of standing and walking. He further argues that the "medical records repeatedly state that it is painful for [Plaintiff] to walk and that he has had to undergo numerous foot procedures." [17], p. 8.

It is well-settled that "'ALJs must not succumb to the temptation to play doctor and make their own independent findings.'" *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). "[I]n contrast, [the ALJ] does *not* play doctor when he discusses and weighs the medical evidence and makes appropriate inferences from that evidence." *Patricia B. v. Berryhill*, No. 17 CV 50201, 2019 WL 354888, at *2 (N.D. Ill. Jan. 29, 2019) (emphasis in original). *See also Featherstone v. Colvin*, No. 13 CV 6559, 2016 WL 147655, at *6 (N.D. Ill. Jan. 13, 2016) ("[T]he determination of the RFC is an issue reserved for the Commissioner, and in determining that RFC, the ALJ is required to consider all of the relevant medical and nonmedical evidence."). Contrary to Plaintiff's position, here, the ALJ spent a significant amount of time setting out Plaintiff's years-long medical history as well as a summary of the multiple medical opinions. This included medical tests, examinations, observations and conclusions of Plaintiff's physicians. The ALJ crafted his RFC based on all the relevant evidence; this included documentation of Plaintiff's chronic back, neck, shoulder, and wrist pain and injury, neuropathy in his extremities, and toe amputation. The ALJ further took into account documentation that Plaintiff reported pain improvement with medication, exhibited normal muscle strength, tone and bulk in his extremities, improvement in numbness and tingling with use of braces, and the ability to care for himself and, with the help of his wife, care for his two children, one of whom is severely disabled.

Additionally, the ALJ considered the state agency reviewing physicians' assessments that Plaintiff could sit, stand, or walk about six hours in an eight-hour workday, finding the opinions partially persuasive in that there was other evidence in the record to indicate that Plaintiff was more limited than these reviewers determined. Likewise, the ALJ found the assessment of the state independent evaluator to be partially persuasive – noting that while Dr. Ramchandani did not specify a "function-by-function" limitation for Plaintiff, his findings were generally consistent with medical record evidence. R. 20. As to Plaintiff's treating physician, Dr. Novoseletsky, he found that based on the 2016 functional capacity evaluation, Plaintiff could return to work with limitations, including standing two hours and walking four to six hours. R. 20-21. The ALJ noted that he adopted much of Dr. Novoseletsky's limitations in crafting Plaintiff's RFC but found the opinion only partially persuasive as Plaintiff showed some improvement since June 2016. *Id*. "[A]n ALJ is only impermissibly 'playing doctor' when [he] builds an RFC based on unsupported assumptions instead of relevant evidence." *Featherstone*, 2016 WL 147655, at *2. The ALJ here did a more than adequate job of basing the crafted RFC on relevant evidence.

6

Relatedly, Plaintiff argues that the ALJ failed to confront Plaintiff's foot problems when determining that Plaintiff would be able to perform light work with restrictions. The Court disagrees for the same reasons as set forth above. In making his findings, the ALJ took into consideration all of Plaintiff's medical records, including those addressing Plaintiff's foot issues. While the ALJ pointed out that Plaintiff was noted to have normal strength, tone, and bulk in his extremities and a steady gait, the ALJ also accounted for Plaintiff's pain management and other limitations when he reduced Plaintiff's standing or walking limits to four hours in an eight-hour workday – less than the physician recommendations. Further, the Seventh Circuit has stated that "the determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). *See also* 20 C.F.R. § 404.1527(d) (the ALJ is "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability.").

Plaintiff makes a further argument that the ALJ should have sought an additional evaluation of Plaintiff's condition based on his position that Dr. Novoseletsky did not consider Plaintiff's foot problems when forming his opinion. "It is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations." *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012). However, the court generally "defers to the ALJ's judgment on the quantity of evidence needed to develop the record." *Carroll v. Barnhart*, 291 F.Supp.2d 783, 795 (N.D. Ill. 2003) (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)). Also, "an ALJ is not required to order a consultative examination when there is no objective evidence in the record to support such an examination." *Id*. Here, a consultative examination was performed by Dr. Ramchandani, as noted above, in June 2018, which noted Plaintiff's foot concerns. Despite this, Plaintiff argues further that "the ALJ fails to consider the plaintiff's new foot issue which were only worsening in late 2018 and 2019 which were being treated by a different doctor." [17], p. 10. However, the medical record Plaintiff cites to in support of his argument is a treatment record from a podiatrist dated July 2018 wherein the doctor discussed general foot care with Plaintiff, instructed him on how to keep his feet free of infection, and debrided a callus. R. 523. The Court does not find that this is the type of evidence that would support a finding that the ALJ should have ordered an additional evaluation. In his decision, the ALJ noted that he considered all evidence of record. Further, an "ALJ is not required to update medical evidence through the time of the hearing." *Carroll*, 291 F.Supp.2d at 795. Plaintiff has failed to persuade the Court that an additional medical evaluation of Plaintiff's medical condition was required.

Finally, Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility. Plaintiff takes the position that the ALJ "seems to have simply discounted or ignored plaintiff's testimony and a significant portion of the medical record without discussion." [17], p. 10. Plaintiff acknowledges that the medical record, including the functional report and Plaintiff's testimony, showed that Plaintiff was able to: care for his personal hygiene, shower, change his clothes, drive a car, perform light housework, including simple cleaning, washing dishes, vacuuming, folding laundry, and help his daughter get ready for school and drop her off. The ALJ further found that Plaintiff experienced a reduction in back pain and an ability to perform his daily activities more easily with the use of topical medications. The ALJ also noted that the record showed no evidence of Plaintiff suffering from adverse side effects from treatments or medications that would prevent him from performing light work. R. 15. Taking all of Plaintiff's statements into consideration with

the total record in evidence, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms, not entirely consistent with the medical and other evidence in the record. R. 19. Under SSR 16-3P, in evaluating the intensity, persistence, and limiting effects of a Plaintiff's symptoms, an ALJ is instructed to consider various factors, including a Plaintiff's daily activities and medication use, an evaluation often described as the "credibility finding." SSR 16-3P (Mar. 28, 2016); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). An ALJ's credibility finding is given "special deference" and will be overturned only if it is "patently wrong," meaning that it "lacks any explanation or support." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quotations omitted). The ALJ's credibility determination here was explained and supported, and thus was not patently wrong.

The Court finds that the ALJ's opinion is supported by substantial evidence. The ALJ's RFC determination was thorough and fair. Plaintiff's argument that the ALJ erred in failing to support an RFC of light work with restrictions is unsupported by the record.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [17] is denied and the Commissioner's motion for summary judgment [22] is granted.

Date: 03/20/2024                    ENTER:

*Margaret J. Schneider*
United States Magistrate Judge